UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRIAN HANCOCK,                          Case No. 1:15-cv-198

       Plaintiff,                           Beckwith, J.
                                                           Bowman, M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Brian Hancock filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED AND REMANDED under sentence four for further development of the administrative record. In the alternative, I recommend remand without reversal under sentence six.

**I. Summary of Administrative Record**

In August 2011, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and in September 2011, he filed an application for Supplemental Security Income ("SSI"). Plaintiff alleges a disability onset date of October 16, 2010 based primarily upon his mental impairments. He is insured for purposes of DIB through June 30, 2015.

1

The record reflects that Plaintiff filed prior applications on November 3, 2009 and again on November 23, 2010. Those applications were denied on February 11, 2010 and on March 3, 2011, respectively, and were not appealed. The prior denials are binding under the doctrine of *res judicata* pursuant to 20 C.F.R. §404.957(c)(1) and §416.1457(c)(1). (Tr. 147).

After Plaintiff's most recent applications were also denied initially and upon reconsideration, he requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On August 13, 2013, a hearing was held before ALJ Greg Kenyon in Cincinnati, Ohio, (Tr. 32-69). Plaintiff appeared with a non-attorney representative, Brook Anderson,[1] and Plaintiff, his wife, and a vocational expert ("VE") provided testimony. On October 24, 2013, ALJ Kenyon issued a decision, concluding that Plaintiff was not disabled. (Tr. 147-156). The Appeals Council denied Plaintiff's request for review; therefore, the ALJ's decision remains as the final decision of the Commissioner.

Plaintiff was 37 years old at the time of the ALJ's decision, which is defined as a younger individual. He has high school education and past relevant work as a grocery clerk, assembler, merchandiser, and delivery driver. The ALJ determined that Plaintiff has the following severe impairments: "a seizure disorder, diabetes mellitus, obesity, depression, and an anxiety disorder/post-traumatic stress disorder (PTSD)." (Tr. 149). However, the ALJ determined that none of Plaintiff's impairments, either alone or in combination, met or medically equaled Listings 12.05 or 12.06 in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability.

---

[1] The record reflects that Ms. Anderson works for the same law firm that represents Plaintiff in his appeal to this Court.

2

(Tr. 150). Instead, the ALJ determined that Plaintiff still retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> (1) occasional crawling and balancing; (2) frequent stooping, kneeling, and crouching; (2) no climbing of ladders, ropes, or scaffolds; (4) no work around hazards such as unprotected heights or dangerous machinery; (5) no driving of automotive equipment; (6) limited to performing unskilled, simple, repetitive tasks; (7) occasional contact with co-workers and supervisors; (8) no public contact; (9) no jobs involving rapid production pace work or strict production quotas; and (10) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next.

(Tr. 152). Based on the testimony of the vocational expert, the ALJ determined that although Plaintiff could not perform any of his past work, he still could perform jobs that exist in significant numbers in the national economy, including the representative occupations of cleaner, packer, and material handler. (Tr. 155). Therefore, the ALJ concluded that Plaintiff is not under a disability.

In his Statement of Errors, Plaintiff argues that remand is warranted under Sentence Six based on the existence of new and material evidence. In the alternative, Plaintiff argues that remand under Sentence Four is warranted because the ALJ erred in weighing the opinion evidence and by finding that Plaintiff's depression did not meet or medically equal Listing 12.04. For the reasons that follow, I agree that remand is required.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to

3

prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can

4

still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

**1. Sentence Six Remand**

Ordinarily, in determining whether substantial evidence exists in the record to support the Commissioner's position, this Court can consider only the evidence that was presented to the ALJ. However, the Court may remand under sentence six of 42 U.S.C. §405(g) for consideration of evidence that was not previously considered by the ALJ if the Plaintiff proves that the additional evidence is new and material, and that he had good cause for his failure to earlier present that evidence. Plaintiff bears the burden of proving that remand is proper under sentence six. *Willis v. Sec'y of HHS*, 727 F.2d 551, 553-554 (6th Cir. 1984). The Supreme Court's interpretation of sentence six of § 405(g) in *Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), explains the procedural process as follows:

> The district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new

5

> evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding.

*Id.* at 98. Here, Plaintiff persuasively argues that this Court should remand for consideration of new and material evidence concerning his mental impairments.

Plaintiff's hearing before the ALJ was held in August 2013, and the ALJ issued his written decision on October 24, 2013. At the hearing, Plaintiff's representative argued that despite significant physical impairments including a seizure disorder and diabetes, "the main impairment is from the depression," which she argued was severe enough to meet Listing 12.04. (Tr. 35-36).

Barely a week after the ALJ's adverse decision denying disability benefits, on November 1, 2013, Plaintiff presented to the Emergency Room at the Adams County Hospital with suicidal ideation and self-inflicted abrasions to his left forearm. (Tr. 135, 137). He was discharged with instructions to follow up with his physician. Three days later, Plaintiff again began to cut his wrist, stating he wanted to "end it all." (Tr. 75). He presented to Christ Hospital on November 4, 2013 with significant mental limitations, including but not limited to anxiety, suicidal thoughts and limited judgment. (Tr. 83). Plaintiff was admitted and began electroconvulsive therapy upon the recommendation of his treating physician, Dr. Helm, and other hospital staff. (Tr. 89). During his nine-day psychiatric hospital stay, he received three ECT treatments. (Tr. 79). His GAF score on admission was 40; on discharge, his GAF score had increased to 50. Plaintiff was advised to continue ECT treatment on an outpatient basis.

On February 14, 2014, Plaintiff submitted the referenced medical evidence of his ER visit and psychiatric hospital admission to the Appeals Council. However, the

Appeals Council declined to review the ALJ's decision on grounds that the "new information is about a later time." (Tr. 2).

There is no dispute that the post-hearing evidence is "new" in that it was not in existence or available to Plaintiff at the time of the hearing. Thus, the only question is whether the new evidence is "material." To satisfy the materiality requirement, Plaintiff must show that there was a "reasonable probability" that the Commissioner would have reached a different conclusion on the issue of disability if presented with the additional evidence. The Commissioner argues that the new evidence fails this second part of the test for a sentence six remand.

Wisely, the Commissioner does not rely upon the Appeals Council's analysis. The refusal of the Appeals Council to consider evidence merely because it was generated after the date of the ALJ's decision appears contrary to law, and arguably would create a "catch-22" situation whereby few claimants could obtain review by producing evidence that is both "new" and "material." According to the Appeals Council, the proof that Plaintiff's evidence was "new," that the evidence post-dated the ALJ's review, automatically made that evidence irrelevant and immaterial.

In an attempt to provide a more rational basis to uphold the Council's decision that the clearly "new" evidence is not "material," the Commissioner points out that the November 1, 2013 ER record states "[p]roblem is new" and reflects discharge a few hours later based upon the improvement of symptoms. (Tr. 139). To the extent that the Commissioner is suggesting that the ER record reflects a new and unrelated psychiatric condition, the undersigned cannot agree. The focus of the hearing was on the limitations resulting from Plaintiff's chronic depression. The subsequent ER visit and psychiatric hospitalization both directly related to the same condition.

To the extent that the Commissioner is discounting the ER record as somehow immaterial because the Plaintiff was discharged based upon his "improvement" within a few hours, the undersigned again disagrees. That improvement was extremely short-lived, since Plaintiff was admitted for a lengthy psychiatric stay just three days later. The Commissioner also points to evidence that upon discharge from the hospital, Plaintiff's mental status exam showed significant improvement with no suicidal ideation. (Tr. 80). The Commissioner suggests that based on the mental status exam on discharge, Plaintiff would not meet or equal Listing 12.04 and the materiality of the new records is "speculative at best." However, permanent psychiatric hospitalization for unrelenting suicidal ideation is not required to meet or equal the listing. Merely to consider the Plaintiff's mental status at discharge from a lengthy hospital admission would be improper. Additionally, Plaintiff did not solely argue that he met Listing 12.04, but also argued that – regardless of the listing - he would be unable to work based upon the severity of his functional impairment. Overall, the hospital records reflect ongoing psychiatric symptoms relating to Plaintiff's chronic depression. The records are clearly material, because they call into doubt the ALJ's determination that Plaintiff's symptoms were only "moderate." As Plaintiff points out, the records are particularly material to the ALJ's analysis of the opinion evidence, including but not limited to the opinions of treating physicians. (*See, e.g.*, Tr. 615, 629).

Last, although the Appeals Council itself did not reject the new evidence on this basis, the Commissioner argues that the Sixth Circuit takes "a harder line on the good cause test" and requires a Plaintiff to provide "a valid reason for his failure to obtain evidence prior to the hearing." *Courter v. Com'r of Soc. Sec.*, 479 Fed. Appx. 713, 725 (6th Cir. 2012)(quoting *Oliver v. Sec'y of HHS*, 804 F.2d 964, 966 (6th Cir. 1986)). In

8

*Courter*, the Sixth Circuit was highly critical of the submission of two "new" opinions that the plaintiff satisfied the listing for mental retardation, because the opinions were sought only after the ALJ issued an adverse decision. One of the opinions was solicited by counsel a full year after the ALJ's decision. The appellate court dismissed the plaintiff's attempt to show "good cause" for her delay in submitting the relevant evidence:

> Presumably, Claimant is arguing that she could not anticipate that the ALJ would find that she did not qualify as mentally disabled and therefore that she would need to bolster her case with additional evidence. Claimant's argument is frivolous and fails to provide a reasoned explanation for or detail the obstacles that hindered her from seeking the evaluations sooner…. A belief that one would not "lose" given the evidence admitted cannot meet the "good cause standard for failing to obtain or submit all useful evidence in the first instance."

*Id.* at 725-726 (internal citations omitted).

In contrast to *Courter*, it would have been impossible for Plaintiff here to earlier obtain the "new" evidence. This is not the type of case in which a claimant did not bother to pursue a recommended treatment or negligently delayed obtaining available opinion evidence. Plaintiff continually sought treatment for severe and chronic depression that his treating physician described as intractable. He was admitted to the hospital shortly after the ALJ issued his unfavorable decision. Only after Plaintiff's symptoms worsened to the point of requiring an extended hospital stay did his physicians recommend the new ECT treatment.

Because I find a significant probability that the new evidence would result in a different determination, remand would be appropriate under sentence six. Under a sentence six remand, judgment is not entered and this Court retains jurisdiction until post-remand agency proceedings are complete*. See Love v. Com'r of Soc. Sec.*, 605 F. Supp.2d 893 (W.D. Mich. 2009).

### 2. Sentence Four Remand – Substantial Evidence Analysis

The law permits this Court to remand for only two reasons – either under sentence six, or under sentence four of 42 U.S.C. §405(g).  The two types of remands are mutually exclusive.  As an alternative to remand under sentence six, Plaintiff presents two assignments of error in favor of remand under sentence four.  First, he argues that the ALJ erred in analyzing the opinion evidence.  Second, he argues that the ALJ erred by failing to find that Plaintiff meets or equals Listing 12.04.   Under sentence four, a court may enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." *Walton v. Astrue*, 773 F. Supp. 2d 742, 746 (N.D. Ohio 2011)(internal citation omitted).  Unlike a remand under sentence six, in a sentence four remand, this Court enters final judgment and does not retain jurisdiction.

#### a. Opinion Evidence

Relevant regulations set forth guidelines for the evaluation of medical opinion evidence.  In general, those regulations require an ALJ to give most weight to the opinions of treating physicians, and to give greater weight to the opinions of examining consultants than to those of non-examining consultants. The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p.

The presumptive weight established by the regulations is not without exceptions. In accord with the regulatory language, controlling weight need not be given to a treating source's medical opinion that is not "well supported by medically acceptable clinical and laboratory diagnostic techniques" or one that is "inconsistent with the other substantial evidence in the record." In addition, under appropriate circumstances, an ALJ may give greater weight to a consulting physician's opinions. *Blakley v. Com'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009). Nevertheless, if an ALJ rejects the opinion of a treating physician, he must articulate "good reasons'" for doing so. *Wilson v. Com'r of Soc. Sec.*, 378 F.3d 544 (6th Cir. 2004); 20 C.F.R. §404.1527(c)(2).

In this case, the ALJ essentially inverted the hierarchical scheme established by the regulations in terms of the weight he gave to the various medical opinions that relate to Plaintiff's mental limitations. Thus, the ALJ gave the most weight to the opinions of two non-examining psychologists, "significant weight" to the RFC opinions of a one-time examining psychological consultant, and "little weight" to one of Plaintiff's treating psychiatrists.[2] Such analysis is clearly permitted under appropriate circumstances, so long as the ALJ provided "good reasons" for rejecting the opinions of the treating physicians. On the record presented, however, I find reversible error.

Plaintiff treated with psychiatrist Diane Vickery, M.D., from February 2011 through June 2012, and with David Helm, M.D., from August 2012 through the date of the August 2013 hearing. Dr. Vickery offered RFC opinions that support a determination of disability based upon mental limitations. (Tr. 413-418).

---

[2]The ALJ did not reference Plaintiff's second treating psychiatrist, Dr. Helm.

11

Plaintiff points to Dr. Helm's records[3] as offering a similar "opinion" but Dr. Helm's "opinion" is far less detailed than the multiple opinions offered by Dr. Vickery. Dr. Helm stated on June 3, 2013 in a written record submitted at the hearing that Plaintiff's depression is "refractory and [he is] unable to work…. He is unable to function in a competitive job environment." (Tr. 629; *see also* Tr. 67-68). As the Commissioner points out, an opinion by a treating physician that a claimant is disabled from all work is explicitly excluded by the regulations from the type of medical opinions that are entitled to controlling weight, because such statements constitute "an administrative finding that is dispositive of the case," and are reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). To the extent that Plaintiff suggests that the ALJ erred by ignoring Dr. Helm's "disability" opinion, the ALJ had no duty to give any weight to Dr. Helm's non-medical opinion that Plaintiff was disabled.

In his reply memorandum, however, Plaintiff emphasizes the portion of the same record in which Dr. Helm opined that Plaintiff's depression was "major with impairment of mood and focus and neg[ative] thought flood," and was "refractory" as speaking specifically to the nature and severity of Plaintiff's symptoms. (Tr. 629). The regulations do not limit the definition of medical opinions to RFC forms, but instead define opinions as statements from physicians "that reflect judgment about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can do despite impairment(s), and your physical or mental restrictions." *See* 20 C.F.R. §§404.1527(a) and 416.927(a). At least a portion of Dr. Helm's statements meet that definition. Even if the ALJ did not believe that Dr. Helm's disability statement was a

---

[3] Many of the referenced records from the Shawnee Mental Health Center appear to be clinical records from therapists, who presumably were overseen by Dr Helm.

12

qualifying medical opinion, it is remarkable that he failed even to reference Dr. Helm, particularly given that Plaintiff's representative drew attention to the fact that he had "been seeing Dr. Helm for almost a year now" and specifically quoted Dr. Helm's June 2013 opinion that "based on the symptoms [Plaintiff] was having that he would not be able to maintain employment." (Tr. 68, citing Tr. 629).

Unlike Dr. Helm, Dr. Vickery offered multiple and unequivocal medical opinions concerning the functional ways in which Plaintiff's mental limitations would impact his ability to work. (Tr. 413-418). Dr. Vickery offered additional opinions that Plaintiff experiences "marked" restrictions in his activities of daily living and in maintaining concentration, persistence or pace, and "extreme" limitations in maintaining social functioning. (Tr. 415). The ALJ broadly rejected all of Dr. Vickery's opinions as entitled to "little weight" on grounds that, despite describing Plaintiff "as having [a] listing level [amount] of anxiety and depression," Dr. Vickery's "progress notes…tell a different story." (Tr. 154). In the ALJ's view, Dr. Vickery's notes[4] reflect "mostly moderate level symptoms of depression and anxiety which seem to stem in part from marital difficulties with his wife. The claimant has some element of social isolation but is able to perform jobs in a nonpublic setting." (Tr. 154).

The ALJ's analysis of Dr. Vickery's May 16, 2012 opinions is not supported by substantial evidence and does not amount to "good reasons" for rejecting all of her opinions. Aside from a cursory reference to general regulatory requirements that relate to opinion evidence several pages earlier in the ALJ's opinion, (see Tr. 152), the ALJ fails to reference Dr. Vickery's special status as Plaintiff's treating psychiatrist or the

---

[4]As with the records from Dr. Helms, the records from the Shawnee Mental Health Center dating from Dr. Vickery's treatment include some notes from other therapists, who presumably provided treatment in tandem with Dr. Vickery's medication management.

13

"controlling weight" ordinarily given to such opinions so long as they are "well-supported" and "not inconsistent with other substantial evidence." The ALJ never states or explains directly why Dr. Vickery's opinion is not entitled to controlling weight.

The absence of any discussion of Dr. Helm and the short analysis rejecting wholesale all relevant opinions of Dr. Vickery stand in troubling contrast to the "great weight" the ALJ gives to earlier December 22, 2011 and April 13, 2012 mental RFC assessments of non-examining consultants, Todd Finnerty, Psy. D., and Melanie Bergsten, Ph.D, and the "significant weight" he gives to the RFC opinions of one-time psychological consultant Dr. Berg. (Tr. 151, 154, 167-171, 191-195). At the time that the reviewing psychologists assessed Plaintiff's mental limitations, they had only twenty pages of medical records relating to Plaintiff's psychiatric condition to evaluate – ten of which were from Plaintiff's December 2011 consulting evaluation by Dr. Berg.

Importantly, none of the three consultants had access to Plaintiff's treatment records from Dr. Vickery or Dr. Helm, (*see* Tr. 165), nor did they have a copy of Dr. Vickery's May 2012 RFC opinions. In *Blakley,* the Sixth Circuit reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakley*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)). Under *Blakley*, an ALJ may choose to credit the opinion of even a non-examining consultant who has failed to review a complete record, but he should articulate his reasons for doing so. If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis*. Here, the ALJ provided neither

14

acknowledgement of the incomplete records reviewed by Drs. Finnerty and Berg, nor an adequate explanation of why he believed it was appropriate to rely so heavily on the non-examining psychologists despite their inability to consider Plaintiff's most recent mental health records from his treating psychiatrists.

Defendant argues that, although an ALJ who rejects the opinions of a treating physician is required to consider factors such as supportability, consistency, and specialization, the ALJ's minimal analysis herein should be considered sufficient, since an ALJ is not required to provide "an exhaustive factor-by-factor" analysis. *Francis v. Com'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011). The Defendant cites cases that support upholding an analysis as "sufficient…[even though] brief," *see Nejat v. Com'r of Soc. Sec.*, 359 Fed. Appx. 574, 578 (6th Cir. 2009), and even if "indirect" or "implicit." *Brock v. Com'r of Soc. Sec.*, 368 Fed. Appx. 622, 625 (6th Cir. 2010).

The cited cases notwithstanding, the ALJ's rejection of Dr. Vickery's opinions, and his silence with respect to Dr. Helm's opinions, fails to satisfy the "good reasons" standard. The ALJ appears to have rejected Dr. Vickery's opinion as inconsistent with Plaintiff's treatment notes. (Tr. 154, "progress notes…tell a different story with mostly moderate level symptoms"). But the undersigned's review of the same notes does not find "mostly" moderate symptoms. Although the ALJ was entitled to a "zone of choice" in evaluating the evidence, the analysis here reflects legal error that calls into question the interpretation of the selected records. The main example Defendant cites of "moderate" symptoms was on an intake visit in February 2011. Other records

consistently document more serious symptoms,[5] and Dr. Vickery repeatedly increased or changed Plaintiff's medications over a sixteen month course of treatment.

In addition, the undersigned finds problematic the ALJ's reasoning that Dr. Vickery's opinions on the severity of Plaintiff's intractable depression were invalid based on the ALJ's view that Plaintiff's symptoms "seem to stem in part from marital difficulties with his wife." Although two records briefly reference some interpersonal conflict Plaintiff had with his wife (Tr. 412, 421), neither Dr. Vickery nor any other mental health professional opined that Plaintiff's severe and chronic depression related to his marital difficulties.[6] The analysis suggests an inappropriate level of second-guessing about whether Plaintiff's depression is chronic or more transient and situational.

.      **b. Listing 12.04**

The Listing of Impairments is a set of impairments considered to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Com'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009)(internal quotation marks and citation omitted). If a Plaintiff satisfies a Listing at Step 3 of the sequential analysis, he or she is entitled to conclusive presumption of disability. However, the Plaintiff bears the burden of proving that he meets or equals all of the criteria of a listed impairment. *See Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).

---

[5]Even Dr. Berg, on the basis of his clinical interview with Plaintiff (without testing and without the benefit of psychiatric treatment notes that arguably showed a worsening of symptoms) described Plaintiff as presenting with depression that was described as falling in the "moderately severe" range. (Tr. 382).
[6]The relevance of this statement is unclear to the undersigned. Plaintiff was treated with multiple anti-depressants, and ultimately ECT, and reported a long (and close familial) history of depression dating to his childhood, (Tr. 382), Social security regulations focus on functional limitations; the cause of a particular diagnosis is arguably irrelevant.

16

As a third assignment of error, Plaintiff argues that the ALJ erred by failing to find that his depression met or medically equaled the requirements of both Paragraphs A and B of Listing 12.04. There appears to be substantial evidence that Plaintiff's depression satisfies Paragraph A, although the ALJ failed to discuss any of the relevant criteria. The ALJ's failure to discuss the Paragraph A criteria when Plaintiff specifically argued that his depression was of listing level severity was error.

The ALJ did conclude that Plaintiff did not satisfy Paragraph B based on the ALJ's determination that he did not have at least two "marked" restrictions in his activities of daily living, in maintaining social functioning, or in maintaining concentration, persistence, or pace. The ALJ also determined that Plaintiff also could not satisfy the Paragraph B criteria with a single "marked" restriction, because he did not have "repeated episodes of decompensation" of "extended duration." (Tr. 150-151). Instead, the ALJ determined that Plaintiff had only mild restrictions of activities of daily living, moderate difficulties in maintain social functioning and moderate difficulties in maintaining concentration, persistence or pace. (*Id.*)

Plaintiff argues that the ALJ erred in failing to find "marked" limitations in his social functioning and in the area of concentration, persistence or pace. Plaintiff's argument is based primarily on the treatment notes and RFC opinions of Dr. Vickery that reflect cognitive slowing, racing mind, and difficulty leaving his home. (Tr. 442, 445, 612). Dr. Helm also observed poor concertation, attention, and reasoning as well as poor judgment and insight. (Tr. 534, 536, 541). Dr. Vickery stated that Plaintiff had "no ability" to maintain socially appropriate behavior and was "unable to meet competitive standards" with interacting and relating to the general public. (Tr. 415). She opined that Plaintiff had "marked" limitations in the area of concentration, persistence or pace, and

17

"extreme" (more than marked) limitation in the area of social functioning. (*Id.*). Because the undersigned finds reversible error in the ALJ's overall analysis of the opinion evidence, including but not limited to the lack of "good reasons" for rejecting the opinions of Dr. Vickery, the issue of whether Plaintiff meets or equals Listing 12.04 should be re-examined on remand.

### III. Conclusion and Recommendation

The undersigned finds grounds for remand under both sentence four and sentence six. Therefore, the undersigned must determine which procedural course would be best to adopt. The determination of remand under either sentence six or sentence four impacts both the retention of jurisdiction by this Court, versus the entry of final judgment, and the availability of attorney's fees under the Equal Access for Justice Act. *See Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2162-2165 (1991)(explaining that under the EAJA's final judgment rule, the 30–day period begins in sentence four cases after the court enters its judgment and the appeal period runs, and begins in sentence six cases after the Secretary returns to court following a post-remand proceeding's completion, the court enters a judgment, and the appeal period runs).

Based on the record presented, the undersigned recommends that an order of remand be entered under sentence four. The ALJ's non-disability determination is not supported by substantial evidence in the record as a whole, primarily based upon the errors made in the evaluation of the opinion evidence. When a case is remanded under sentence four, additional evidence may be taken. In that way, the new evidence that otherwise would warrant a remand under sentence six may yet be considered. *Sullivan v. Finkelstein,* 496 U.S. 617, 625–26, 110 S.Ct. 2658, 2664, 110 L.Ed.2d 563 (1990) (sentence four provides appropriate relief when evidence on record is insufficient

to support the Secretary's conclusions and further fact finding is necessary); *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 173 (6th Cir. 1994).

Under sentence four, a trial court "can reverse the decision and immediately award benefits *only* if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* at 176 (emphasis added). This is not a case in which all factual issues have been resolved.

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED AND REMANDED** under sentence four, for further development of the record consistent with this report and recommendation, that judgment be entered, and that this case be **CLOSED.** Should a reviewing court disagree with this recommendation, **IT IS ALTERNATAIVELY RECOMMENDED THAT** this case be **REMANDED** under sentence six with the Court to retain jurisdiction until administrative proceedings have been concluded.

       */s Stephanie K. Bowman*
       Stephanie K. Bowman
       United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRIAN HANCOCK,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:15-cv-198

Beckwith, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).